# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JOHNATHAN L. VEENSTRA,

    Plaintiff,

v.

RELIANT CAPITAL SOLUTIONS, LLC,

    Defendant.

Case No. 1:20-cv-07021

## COMPLAINT

**NOW COMES** JOHNATHAN L. VEENSTRA, by and through his undersigned counsel, complaining of Defendant RELIANT CAPITAL SOLUTIONS, LLC, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367.

4. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

5. JOHNATHAN L. VEENSTRA ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided in Oswego, Illinois.

6. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

7. RELIANT CAPITAL SOLUTIONS, LLC ("Defendant") maintains its principal place of business at 670 Cross Pointed Road, Gahanna, Ohio 43230.

8. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because the principal purpose of Defendant's business is the collection of debt owed to others.

9. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it regularly collects or attempts to collect debts owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

10. At some point in time, Plaintiff applied for and was approved for student loans through the U.S. Department of Education.

11. Due to financial difficulty, Plaintiff fell behind on his payments on the student loans ("subject debt").

12. The subject debt is a "debt" as defined by 15 U.S.C. § 1692a(5).

13. The subject debt was eventually placed with Defendant for collection.

14. On or about February 2019, Defendant mailed Plaintiff a letter in an attempt to collect the subject debt ("Defendant's Letter").

15. On or about March 25, 2019, in an attempt to settle the subject debt, Plaintiff reached out to Defendant via phone and spoke with Francis at extension 6773.

16. After verifying his identity, Plaintiff provided Francis with information regarding his income so that a payment plan could be established.

17. Based on the information furnished to Francis, Plaintiff was informed that his monthly payments to bring the student loans current would be $454 for 9 months.

18. Francis then requested that Plaintiff fill out a rehabilitation form and return it to Defendant to memorialize the agreement.

19. Plaintiff filled out the requested form and submitted it to Defendant's online portal the same day, March 25, 2019.

20. Concerned that he had not received a written statement with where to send his payment, Plaintiff then placed another call to Defendant on April 12, 2019, this time speaking with representative Matt at extension 6816.

21. During this phone call, Matt advised Plaintiff that he could not make a payment directly to Defendant but had to wait for a statement to be mailed to Plaintiff.

22. While reviewing Plaintiff's file, Matt stated that the payment amount that was originally agreed to was not sufficient to enter a rehabilitation agreement and demanded that Plaintiff increase his monthly payments to $527.

23. Adamant that he already had an agreement in place, Plaintiff refused to change his payment plan after the fact and hung up with Matt.

24. Shortly thereafter, in late April 2019, Plaintiff received a statement from the Department of Education stating that his payment was $410 per month going forward.

25. Upon receipt of this letter, Plaintiff believed that his student loans were in the process of being rehabilitated according to the original agreement that he had made with Defendant's representative, Francis.

26. Plaintiff continued to receive statements from the Department of Education and make the $410 monthly payments directly to the Department of Education for the full 9 months of his agreement and beyond.

27. In or about August 2020, Plaintiff decided to get pre-approval for the purchase of a new home.

28. Upon applying with his bank, Navy Federal Credit Union, Plaintiff was denied a

pre-approval.

29. To Plaintiff's surprise, one of the reasons for denial was that Plaintiff's student loans were still showing as in default, despite the fact that the rehabilitation program should have ended in December 2019.

30. Immediately, Plaintiff hired an attorney to represent him in discussion with Defendant.

31. On August 4, 2020, Plaintiff and Plaintiff's attorney, Jennifer Filipiak ("Filipiak"), completed a third party disclosure (the "Disclosure") on which Filipiak was listed as Plaintiff's attorney.

32. Filipiak then sent the Disclosure to the Department of Education the same day.

33. On August 11, 2020, Filipiak confirmed with the Department of Education that the Disclosure had been received.

34. On August 11, 2020, Filipiak also spoke with Defendant's representative, Matt at extension 6816, the same representative that had requested that Plaintiff increase payments during the phone call in April 2019.

35. Filipiak confirmed with Matt that he also had access to the Disclosure sent to the Department of Education.

36. Also during this phone conversation, Matt stated that the reason the payments needed to increase in April 2019 was due to the fact that Plaintiff's income has changed.

37. Unfortunately, that statement was false, as Plaintiff's income had not changed between the time that Plaintiff spoke with representative Francis and representative Matt.

38. Eventually, Plaintiff entered into a new rehabilitation agreement with Defendant because Defendant refused to honor the previous agreement.

39. Filipiak handled the rehabilitation over the next several months, speaking almost exclusively with Defendant's representative, Matt at extension 6816.

40. On September 25, 2020, however, Filipiak spoke with Defendant's representative, Theresa, to attempt to get confirmation of the rehabilitation agreement in writing.

41. Theresa stated that there was no way for her or any other representative of Defendant to send any sort of written communication regarding the payment plan to Filipiak or to Plaintiff.

42. During the phone calls over the next several months, Defendant's representative, Matt, contradicted himself several times in the process of how rehabilitation worked.

43. Specifically, on September 23, 2020, Matt first stated that once the last payment was made toward the rehabilitation, the account would be sent back to the Department of Education the same day.

44. Based on that assertion, Plaintiff agreed to make the payments necessary to complete the rehabilitation.

45. Plaintiff only agreed to the payments set forth because he was attempting to close on a house, and the information that Matt provided would still allow Plaintiff to go through with the purchase – Plaintiff was on a deadline with the sellers of the home, and would not be able to extend the contract any further than the timeframe which Matt had stated.

46. However, during a phone call, when the last payment was made and confirmed by Filipiak on October 23, 2020, Matt adamantly refused that he had stated the account would be sent to the Department of Education the same day.

47. Additionally during this phone call, Matt stated that he could not give a time frame for the account returning to the Department of Education.

48. When pressed, all Matt would say was that his supervisor would just tell Filipiak the same thing, so there is no point in continuing the conversation.

49. On October 13, 2020, while Plaintiff was still represented by Filipiak, and Filipiak was still in constant communication with Defendant on Plaintiff's behalf, Defendant sent Plaintiff a letter regarding the subject debt.

50. Defendant's Letter depicted, in pertinent part, as follows:



51. Defendant's Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

52. Defendant's letter specifically states "This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose."

53. Despite Defendant's knowledge that Plaintiff was represented by an attorney,

6

Defendant continued to send communications to Plaintiff attempting to collect on the subject debt.

54. Despite Defendant's deceptive practices, Plaintiff's loans are now in good standing with the Department of Education; however, having had his rights violated, he obtained counsel to bring the current action.

## CLAIMS FOR RELIEF

### COUNT I:
### Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*)

55. All Paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

**a.    Violation(s) of 15 U.S.C. § 1692c**

55. Section 1692c(a) of the FDCPA provides:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt-
>
> (2)    if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consent to direct communication with the consumer.
>
> 15 U.S.C. § 1692c(a).

56. Defendant violated 15 U.S.C. § 1692c(a)(2) by sending a letter to Defendant when it knew that Defendant was represented by counsel.

57. Specifically, Defendant had access to Defendant's attorney's information because it confirmed the Disclosure of Plaintiff's attorney and continued to converse with Filipiak from the months of August 2020 through present.

**b. Violations of §1692e and e(10)**

7

58. Pursuant to §1692e of the FDCPA, a debt collector is prohibited from making "any false, deceptive, or misleading representation" in connection with the collection of a debt. 15 U.S.C. §1692e.

59. Section 1692e(10) of the FDCPA prohibits a debt collector from using any false representation or deceptive mans to collect or attempt to collect any debt. 15 U.S.C. §1692e(10).

60. Defendant violated §1692e when it failed to provide Defendant with any written communication regarding the payment agreement between Plaintiff and Defendant.

61. Defendant also violated §1692e when it failed to honor the oral agreement made between Defendant and Plaintiff on March 23, 2019, to which Plaintiff's attention was not brought until August 2020, causing Plaintiff denial of credit and undue stress in the purchase of a new home.

62. Defendant's representative, Matt, violated 15 U.S.C. §§1692e and e(10) by falsely implying that the subject debt would revert to the Department of Education the same day that the last payment was made, when in fact he stated later that there was no timeframe whatsoever that could be given.

63. Specifically, Matt coerced Plaintiff into agreeing to a payment plan that may not, in fact, meet Plaintiff's timeline for the loans to be considered in good standing again.

**WHEREFORE**, Plaintiff requests that this Honorable Court grant him the following relief:

A. a finding that Defendant violated the above-stated section of the FDCPA

B. an award of statutory damages in the amount of $1,000 to Plaintiff;

C. an award to Plaintiff for his reasonable attorney's fees and costs;

D. any further relief this Honorable Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff, on behalf of herself and the members of the putative class members, demand a trial by jury.

Dated: November 25, 2020                     Respectfully submitted,

**JOHNATHAN L. VEENSTRA**

By: */s/ Jennifer Ann Filipiak*

Jennifer Ann Filipiak
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
(630) 575-8180
jmclaughlin@sulaimanlaw.com